CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

AO 91 (Rev. 11/11)  Criminal Complaint

MAY - 2 2022

# UNITED STATES DISTRICT COURT
### for the
Western District of Virginia

JULIA S. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No.  1:22mj50 |
| Amanda Dawn SKEENS ) | |
| ) | |
| ) | |
| ) | |
| ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___Aug. 1, 2019 to Jan. 28, 2022___ in the county of ___Tazewell and Russell___ in the

___Western___ District of ___Virginia___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(b)(1)(A) | conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine. |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Corey Duke, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___05/02/2022___

_____
*Judge's signature*

City and state:  ___Abingdon, Virginia___

Pamela Meade-Sargent, USMJ
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

IN THE MATTER OF THE ARREST OF:                              UNDER SEAL
Steven Cantrell
Joshua Goodman
Amanda Skeens                                                Case No. _____
Rhonda Rose
Zackary Justice

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINTS AND ARREST WARRANTS**

1.    Your affiant, William C. Duke, a Special Agent with the Bureau of Alcohol, Tobacco,
      Firearms and Explosives (ATF), Washington Field Division, Bristol Post of Duty, having
      been duly sworn, deposes and states as follows:

                                    Introduction

2.    I am an investigative law enforcement officer of the United States within the meaning of
      Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct
      investigations and make arrests for the offenses enumerated in Section 2516 of Title 18,
      United States Code.

3.    I am employed as a Special Agent, Certified Explosives Specialist and Bomb Technician
      with ATF.  I have been employed as a Special Agent since February 2005. I have been
      certified as an Explosives Specialist and Bomb Technician since 2018.    I am currently
      assigned to the Bristol, Virginia Field Office.  Prior to becoming an ATF Special Agent, I
      was a Police Officer and Detective with the Chesterfield County, Virginia Police
      Department for five and a half years.  During my tenure in law enforcement, I have attended
      numerous schools and trainings hosted by ATF, FBI, the High Intensity Drug Trafficking
      Areas (HIDTA) program, the Department of Defense, state and local law enforcement, and
      the Department of Justice, dealing in various techniques of investigating firearms,
      explosives, bomb making, post-blast analyses, narcotics, and criminal activity.  I have
      taken part in numerous federal, state, and local investigations concerning violations of
      firearm, narcotics, and explosives laws.

4.    Through instruction, training and experience, I have become familiar with the manner and
      methods criminals use to manufacture, possess, and distribute firearms, narcotics,
      explosives, explosive materials, and destructive devices.

5.    The information contained in this affidavit is based on my personal observations,
      observations of other law enforcement officers, observations of Confidential Informants

                                          1

(CIs) and Cooperating Sources (CS) as related to me, my review of official police and government reports, and consultation with other agents and officer involved in the investigation. The information contained in this affidavit is provided for the limited purpose of establishing probable cause for arrest. The information is not a complete statement of all the facts related to this case.

### Initial Summary of the Investigation

6. Beginning in October 2021, law enforcement in southern West Virginia and southwest Virginia began to obtain information regarding the below named suspects conspiring to distribute quantities of crystal methamphetamine in the counties of Mercer, West Virginia, and Tazewell, Virginia. Through arrests, search warrants, interviews, and the cultivation of CIs, law enforcement was able to identify a network of individuals involved in the possession and distribution of crystal methamphetamine, firearms, and ammunition, the possession and distribution of explosives, and the manufacturing and possession of destructive devices in southwest Virginia.

7. From October 2021 until the present, federal, state, and local law enforcement have conducted interviews, executed search warrants, conducted surveillance, analyzed phone records, researched court records, and conducted controlled purchases from members of the conspiracy. Information gained from arrest, seizures, search warrants, interviews and physical evidence show a conspiracy to distribute crystal methamphetamine, a Schedule II controlled substance, in southwest Virginia, prohibited persons possessing firearms and ammunition in southwest Virginia, the use of firearms in furtherance of narcotics trafficking, prohibited persons possessing explosives, and the manufacturing and possession of destructive devices.

8. This affidavit is submitted in support of probable cause for the issuance of arrest warrants for the following individuals:

   - Steven CANTRELL, for violations of 18 U.S.C. §§ 922(g)(1) and (3), 21 U.S.C. § 846, 18 U.S.C. § 924(c)(1)(A), 26 U.S.C. § 5861(d), and 18 U.S.C. § 842(i);

   - Joshua GOODMAN, for violation of 21 U.S.C. § 846;

   - Amanda SKEENS, for violation of 21 U.S.C. § 846;

   - Rhonda ROSE, for violation of 21 U.S.C. § 846; and

   - Zack JUSTICE, for violation of 21 U.S.C. § 846.

### COUNT I: Steven CANTRELL for violation of 18 U.S.C. § 922(g)(1)

9. On August 22, 2017, in Huntington County, Indiana, Steven CANTRELL was convicted of illegal possession of a hypodermic syringe, a Level 6 felony punishable by up to two

2

and one half (2.5) years in prison. CANTRELL was sentenced to one and a half (1.5) years in prison with one year and 3 days suspended, plus one year probation. On February 25, 2019, pursuant to a plea agreement and upon completion of probation, CANTRELL's Level 6 felony conviction for possession of a hypodermic syringe was vacated and entered as a Class A misdemeanor punishable by up to one year in prison. Thus, from August 22, 2017, until his felony conviction was vacated on February 25, 2019, CANTRELL was prohibited from possessing firearms and ammunition under 18 U.S.C. § 922(g)(1).

10. On January 31, 2019, at approximately 3:30 a.m., deputies from the Russell County Sheriff's Office were called to CANTRELL's residence, 3933 Swords Creek Rd., Apt. #4, Swords Creek, VA, for a disturbance with shots fired. At the scene, they encountered CANTRELL, who would not allow the deputies inside his apartment. Later the same day, at approximately 6:45 p.m., deputies were again called to CANTRELL's residence regarding a disturbance with weapons involved between CANTRELL and his neighbor in Apt. #3. CANTRELL's neighbor told the deputies that CANTRELL had called him earlier in the day and told him to knock on the wall if he was home. The neighbor did as instructed, and as soon as he knocked on the wall, he heard two pops that sounded like gunshots. After he found the suspected bullet holes, the neighbor called the police. Deputies observed bullet holes in the wall of CANTRELL's neighbor's apartment (Apt. #3).

11. On February 1, 2019, Investigator Rhea of the Russell County Sheriff's Office executed a search warrant at CANTRELL's residence, 3933 Swords Creek Rd., Apt. #4, Swords Creek, VA. The following items were seized from CANTRELL's apartment pursuant to the search warrant: a Bryco Arms 9mm pistol, a Taurus .38 revolver, a HiPoint 9mm rifle, an Ithaca Gun Co. 20-guage shotgun, approximately 1082 rounds of ammunition, three small baggies with residue, one metal spoon with confirmed methamphetamine residue, digital scales, drug paraphernalia, and a moonshine still. On June 12, 2019, CANTRELL was convicted of misdemeanor possession of a distilling apparatus, brandishing a firearm, reckless handling of a firearm, and destruction of property.

12. On April 14, 2022, I received documents recovered from the search warrant executed on February 1, 2019, at CANTRELL's residence. One of the documents recovered was titled "conditions of parole for out of state cases", which CANTRELL signed on December 19, 2017, and which states he will not use, own, possess, transport, or carry a firearm.

13. Based on my training and experience and a preliminary review by Senior Special Agent Steve Levesque, who is specially trained in conducting interstate nexus examinations, the four firearms possessed by CANTRELL in the Western District of Virginia on February 1, 2019, traveled in and affected interstate commerce.

14. The above facts in this count are in support of probable cause for the issuance of an arrest warrant for Steven CANTRELL for knowingly possessing firearms and ammunition in the Western District of Virginia on February 1, 2019, after having been convicted in a court of law of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

**COUNT II: Steven CANTRELL for violation of 18 U.S.C. § 922(g)(3)**

15.     On July 10, 2020, Deputy Smith with the Russell County Sheriff's Office encountered
CANTRELL in Honaker, VA. Deputy Smith found CANTRELL to be in possession of a
concealed Taurus .38 revolver, a Smith and Wesson .22 pistol, and ammunition for .38 and
.380 caliber firearms. CANTRELL was arrested on this date for misdemeanor obstruction
and misdemeanor carrying concealed weapons. These warrants were active, and
CANTRELL was wanted until he was arrested on January 28, 2022. CANTRELL was
convicted of these offenses on March 23, 2022.

16.     On January 28, 2022, during an attempted purchase of narcotics by a confidential informant
from CANTRELL, Kristopher Lee Proffitt and Steven CANTRELL were identified and
believed to be located at CANTRELL's residence, 255 Limestone Rd., Pounding Mill, VA.
The Tazewell, Virginia Drug Task Force obtained state search warrants for Proffitt and
CANTRELL. Both were located and arrested at the residence for outstanding warrants for
probation violation and contempt of court. During the arrest process, items believed to be
involved with the use and distribution of narcotics, firearms, and ammunition were
observed in plain view. The Tazewell, Virginia Drug Task Force obtained a second search
warrant for these items. During the execution of the search warrant at CANTRELL's
residence, 255 Limestone Rd., Pounding Mill, VA, the following items were seized: a
Remington, Model 710, 30-06 caliber rifle; a Remington, Model 788, .308 caliber rifle;
Champion single-shot 20-guage shotgun; Winchester .270 caliber rifle; single-shot Victor
Ejector, Crescent Firearms shotgun with no serial number; Windham Weaponry Inc. .223
caliber rifle; AK Romarm 7.62x38 caliber rifle; Stevens, Model 320, 12-guage shotgun;
Ruger .22 caliber pistol; Rossi .357 caliber revolver; 2449 rounds of ammunition, 7 blasting
caps, 1 pound of pyrodex powder, two destructive devices, suspected crystal
methamphetamine, suspected marijuana, approximately $6,000.00 in U.S. currency, cell
phones, and other items. The suspected crystal methamphetamine was field tested using a
thermo scientific TruNarc analyzer and tested positive for methamphetamine.

17.     On February 14, 2022, I conducted an interview with Zack JUSTICE. JUSTICE said he
lived with CANTRELL from August 2019 to August 2020 in Swords Creek, Virginia.
During this timeframe, CANTRELL used methamphetamine intravenously daily.
JUSTICE said CANTRELL was usually armed and carried a firearm all the time.
CANTRELL carried a pistol on his right side or in his back waistband, including when he
was dealing methamphetamine. JUSTICE said he observed CANTRELL carrying at
various times a Sig 9mm pistol, a KEL-TEC 9mm pistol, and a Ruger .357 revolver while
dealing methamphetamine. JUSTICE said the Sig and KEL-TEC pistols were both
observed on CANTRELL in 2020. CANTRELL used guns that he took in trade for
methamphetamine as a currency to purchase more methamphetamine for use and sale.
CANTRELL used guns as payment to JUSTICE for methamphetamine on four to five
occasions. JUSTICE detailed that between 2019 and 2020, while living in Swords Creek,
Virginia, with CANTRELL, he received the following firearms from CANTRELL as
payment for crystal methamphetamine: a .45 carbine, a 9mm carbine, a KHAR .40 caliber

4

pistol, two Taurus G2C 9mm pistols, a Taurus .38 ultra-light revolver, and a Smith & Wesson .22 caliber AR-15.

18.      On February 15, 2022, I conducted an interview with a confidential source (CS1), who said that CANTRELL has lived at 255 Limestone Rd. in Pounding Mill, Virginia, for about two years. CS1 said the whole time CANTRELL lived at the Limestone address, CANTRELL had pistols, rifles, and ammunition for his guns. CS1 said that over the past two years, she/he has shot guns with CANTRELL on several occasions. CS1 said she/he has seen CANTRELL shoot up methamphetamine 5-10 times in the past year.

19.      On February 22, 2022, I conducted an interview with CANTRELL. During this interview, CANTRELL admitted he has been using methamphetamine/speed since age 20, or for about 8 years (since 2014), on and off. It began as occasional use and progressed into intravenous methamphetamine use multiple times a day. CANTRELL said he has been trying to quit using methamphetamine and believed he was being watched. CANTRELL said he has used methamphetamine intravenously for the past four to five years, one to two times a day, rarely more than that. The past few months, CANTRELL has been using methamphetamine once a day with a sober day now and then. CANTRELL said he is a gun enthusiast and has been in many fights with a pistol on his side, but never thought of pulling his gun. CANTRELL said he has sold or traded at least half a dozen (6) pistols to Zack JUSTICE. CANTRELL said he traded half or more of the pistols to JUSTICE for methamphetamine and sold half or less of the pistols to JUSTICE for cash. CANTRELL said he got the SKS recovered from his residence on January 28, 2022, from "Jon Boy" after trading him a single shot .223 Handy rifle for the SKS. This took place on "Jon Boy's" porch in 2018 or 2019. CANTRELL and "Jon Boy" shot both rifles. CANTRELL said before the above trade involving the SKS, he purchased an AK style rifle from an unidentified male in Russell County. CANTRELL traded a Rock Island Armory .45 pistol and $200 cash for the rifle. I asked about a Ruger MKII pistol. CANTRELL said he got this pistol from "G" for $200 around six months ago.

20.      On March 3, 2022, I conducted an interview with a confidential source (CS2). CS2 stated she/he had been to CANTRELL's residence on Limestone Road two to three times before the execution of the January 28, 2022, search warrant. CS2 said she/he has seen CANTRELL with a gun on his person one time, and knew he had guns around his house.

21.      On March 3, 2022, I conducted an interview with a confidential source (CS3), who said that CANTRELL uses methamphetamine regularly, daily. CS3 said she/he has seen CANTRELL with guns regularly. CS3 stated that CANTRELL deals methamphetamine regularly.

22.      On March 31, 2022, I conducted an interview with a co-conspirator who said CANTRELL always had lots of guns around the house (long guns, pistols, and lots of ammunition for the guns). The co-conspirator said she/he knew CANTRELL to buy guns for cash but did not know of any traded for methamphetamine. The co-conspirator said CANTRELL always had a pistol in his back pocket. The co-conspirator then said she/he recalled Malik Hamilton traded a handgun, a sawed-off shotgun, another long gun, and maybe a pistol

called a 390 to CANTRELL for methamphetamine in the fall of 2021. The co-conspirator said CANTRELL is an intravenous, daily user of methamphetamine.

23.   On April 8, 2022, I conducted an interview with Joshua GOODMAN, who stated that since March/April 2021, he has been inside CANTRELL's trailer in Pounding Mill (255 Limestone Rd.) 10-12 times. While inside, he has seen multiple long guns, handguns, and large quantities of ammunition (more than 20,000 rounds of ammunition). GOODMAN said CANTRELL told him he would take guns, ammunition, and gold in trade for methamphetamine.

24.   On April 8, 2022, I conducted an interview with a co-conspirator who said she/he has known CANTRELL for about two years. The co-conspirator said she/he would hang out, get high, and use methamphetamine with CANTRELL. CANTRELL would shoot up methamphetamine regularly, not every time, but suspected him to use daily. The co-conspirator said she/he had never seen CANTRELL carrying a gun on his person but has seen CANTRELL with a .22 pistol and a double-sided clip in his car several times. The co-conspirator said she/he has been to CANTRELL's place on Limestone Road about 20 times. The co-conspirator said there were lots of guns (guns on the wall, long guns, handguns, shotguns, etc.) and lots of ammunition.

25.   On April 14, 2022, I received documents recovered from the search warrant executed on February 1, 2019, at CANTRELL's prior residence in Swords Creek, Virginia. One of the documents recovered was a presentence report (PSR) related to CANTRELL's August 22, 2017, conviction in Huntington County, Indiana. According to the PSR, CANTRELL admitted he had been using marijuana since age 16, methamphetamines since age 22, and opiates since age 23.

26.   Based on my training and experience and a preliminary review by Senior Special Agent Steve Levesque, who is specially trained in conducting interstate nexus examinations, the firearms possessed by CANTRELL in the Western District of Virginia on January 28, 2022, traveled in and affected interstate commerce.

27.   The above facts in this count are in support of probable cause for the issuance of an arrest warrant for Steven CANTRELL for knowingly possessing firearms and ammunition in the Western District of Virginia on January 28, 2022, while being an unlawful user of or addicted to methamphetamine, in violation of 18 U.S.C. § 922(g)(3).

**COUNT III: Steven CANTRELL for violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)**

28.   On October 25, 2021, Steven CANTRELL, Joshua GOODMAN, and Noah Fields were arrested by the Mercer County, West Virginia Sheriff's Office for possession of approximately 232 grams of methamphetamine and CANTRELL was found to be in possession of a loaded Thunderstruck .22 Magnum Revolver (Serial# SVF02969). The Mercer County Sheriff's Office was conducting surveillance in the vicinity of SKEENS' residence after receiving numerous complaints from citizens and law enforcement regarding drug activity. Officers observed the black Lincoln MKX in which CANTRELL,

GOODMAN, and Fields were traveling make an improper lane change and then initiated a traffic stop. The driver of the vehicle, Fields, was found to have a suspended/revoked driver's license and placed under arrest. CANTRELL was removed from the front passenger seat of the vehicle and patted down for safety, during which the loaded Thuderstruck .22 Magnum Revolver was discovered in his right rear pocket/hip area. After advising Fields the vehicle would have to be towed and upon doing an inventory search of the vehicle, the approximately 232 grams of methamphetamine was found in a backpack in the front passenger side floorboard where CANTRELL had been sitting, along with a loaded Taurus .45 caliber pistol, assorted ammunition, and digital scales. Statements given by GOODMAN and Fields state that GOODMAN, Fields, and CANTRELL had traveled from Tazewell County, Virginia to West Virginia for CANTRELL to purchase half a pound of methamphetamine from a source (Amanda SKEENS) previously used by GOODMAN for $3200. GOODMAN said CANTRELL was carrying one of the pistols while the other was in a backpack with the drugs. The suspected crystal methamphetamine field tested positive for methamphetamine.

29. On November 3, 2021, Joshua GOODMAN, in the presence of his attorney, stated that in October 2021, Noah Fields drove him and CANTRELL from Virginia to the residence of Amanda SKEENS in Princeton, West Virginia, to purchase methamphetamine. GOODMAN said he has known CANTRELL for a while and that he is dangerous. GOODMAN said CANTRELL had a double barrel .22 (revolver), and the .45 (pistol) as well. GOODMAN said CANTRELL needed a connection and he had one with SKEENS. GOODMAN said the methamphetamine they were caught with on October 25, 2021, should have been half a pound and they paid $3200, minus an 8-ball that Amanda SKEENS got for brokering the deal. GOODMAN said CANTRELL was short $300, and GOODMAN put $300 cash into the deal.

30. On January 28, 2022, following an attempted purchase of narcotics by a confidential informant from CANTRELL, the Tazewell County, Virginia Drug Task Force executed a search warrant at the residence of Steven CANTRELL, 255 Limestone Rd., Pounding Mill, VA. CANTRELL was arrested for outstanding warrants for probation violation and contempt of court. During the execution of the search warrant, suspected crystal methamphetamine, approximately 10 firearms (described above), 2449 rounds of ammunition, 7 blasting caps, 1 pound of pyrodex powder, two destructive devices, suspected marijuana, $6000 in U.S. currency, cell phones, and other items were seized. The suspected crystal methamphetamine was field tested using a thermo scientific TruNarc analyzer and tested positive for methamphetamine.

31. On January 31, 2022, members of the Tazewell County, Virginia Drug Task Force spoke with CANTRELL at the Tazewell County courthouse. During this conversation, CANTRELL stated that most of his drugs were coming from out of state—specifically from West Virginia and North Carolina. CANTRELL said for enough money, the sources would come to him. CANTRELL talked about going to Princeton, West Virginia, and purchasing drugs from a female with Josh GOODMAN and Noah Fields, and said they were arrested by the Drug Task Force in Mercer County, West Virginia, with guns, drugs, and money. CANTRELL said that guns and explosives were more his thing than drugs.

CANTRELL said he was a methamphetamine user and preferred to shoot methamphetamine. CANTRELL told the detectives he could get anything they wanted, could even buy a rocket launcher if they had enough money.

32. On February 14, 2022, I conducted an interview with Zack JUSTICE, who stated that from August 2019 through August 2020, JUSTICE lived with CANTRELL at 3739 Swords Creek Road, Apt. #2, Swords Creek, Virginia. JUSTICE said during that time, CANTRELL was selling about an ounce of methamphetamine a day, anywhere from a gram for $50, an 8-ball for $150, half an ounce for $400, or an ounce for $700. During this timeframe, CANTRELL would take guns (handguns and long guns) in on trade for methamphetamine. JUSTICE stated that Jonathan McGraw traded an SKS to CANTRELL for half an ounce of crystal methamphetamine. JUSTICE stated that CANTRELL took a Ruger Super Blackhawk .44 in trade for methamphetamine. JUSTICE stated that CANTRELL took a Khar .40 in trade for methamphetamine and then traded it to him for one-fourth an ounce of crystal methamphetamine. JUSTICE said he did not deal with CANTRELL again until December 2020. CANTRELL was getting a pound of crystal methamphetamine per week and selling half an ounce of methamphetamine to JUSTICE two to three times a week for $300 per half ounce. JUSTICE said he saw CANTRELL with a pound of methamphetamine on two to three occasions. JUSTICE said that in December 2020, he got an ounce of crystal methamphetamine fronted to him and paid CANTRELL back $200 of the $500-600 he owed him. From December 2020 to February 2021, JUSTICE said he got crystal methamphetamine from CANTRELL approximately 10 times for a total of four to five ounces.

33. JUSTICE said that from June 2021 to October 2021, he was supplied crystal methamphetamine from CANTRELL out of CANTRELL's trailer in Pounding Mill, Virginia (255 Limestone Rd.). JUSTICE said he got methamphetamine eight to ten times (small quantities, an ounce total). JUSTICE said during these drug transactions, CANTRELL was always armed with a pistol. On December 15, 2021, JUSTICE went to CANTRELL's trailer in Pounding Mill, Virginia (255 Limestone Rd.). CANTRELL said he had just picked up two ounces of crystal methamphetamine from a source he (CANTRELL) met in Hansonville, Virginia. JUSTICE saw the methamphetamine and CANTRELL was armed with a stainless .357 revolver. CANTRELL showed JUSTICE an AK rifle, an AR Rifle, and a .22 pistol (Ruger MKII Stainless), which he said he had taken in on trade. In early 2021, JUSTICE stated that he saw CANTRELL with $25,000 and then $20,000 cash on two separate occasions. In the summer of 2021, JUSTICE saw CANTRELL with $10,000 on two or three occasions. All these occasions were at CANTRELL's trailer in Pounding Mill, Virginia.

34. On February 14, 2022, I conducted an interview with Rhonda ROSE, who said that around July 2020, she and another co-conspirator sold CANTRELL an ounce of crystal methamphetamine for $350-400. CANTRELL gave them 20 Roxy 30's as a gift. ROSE and CANTRELL shot up methamphetamine and did some of the Roxy 30's. ROSE said from July 2020 to December 2021, she dealt with CANTRELL six (6) times for a total of 6-12 ounces of crystal methamphetamine, paying $350 per ounce. ROSE said there were guns in CANTRELL's house, and that she had shot CANTRELL's 9mm and .22 pistols.

ROSE said she was in the process of buying an AK rifle and AR-15 rifle from CANTRELL when he got arrested in January 2022. She said they were to trade cash/methamphetamine to CANTRELL for the guns. ROSE estimated that CANTRELL was probably moving a pound of crystal methamphetamine a week.

35.    On February 22, 2022, I conducted an interview with CANTRELL. CANTRELL said he had sold or traded at least half a dozen (6) pistols to Zack JUSTICE. CANTRELL said he traded half or more of the pistols to JUSTICE for methamphetamine and sold half or less of the pistols to JUSTICE for cash. CANTRELL said he did not like to mix sales and trade, so it was one or the other. CANTRELL said in late 2018 or early 2019, he would get ounces of crystal methamphetamine, paying $400-500 per ounce. CANTRELL said he did not want to discuss his weekly or total weights, but said he was getting supplied from JUSTICE regularly. CANTRELL said he would send money, like $500, with JUSTICE to go get an ounce of methamphetamine. CANTRELL discussed a .44 caliber handgun he got for $200 and later sent with JUSTICE to Bluefield as currency for an ounce of dope. CANTRELL said he did take guns in trade for methamphetamine. Out of ten (10) guns he took in, he paid cash for eight (8) and would trade methamphetamine for the other two (2).

36.    On March 3, 2022, I conducted an interview with a confidential source (CS3), who said CANTRELL uses methamphetamine regularly, daily. CS3 stated that CANTRELL deals methamphetamine regularly.

37.    On March 31, 2022, I conducted an interview with a co-conspirator, who said around September 2021, she/he was introduced to CANTRELL as a source for crystal methamphetamine. The co-conspirator stated that from September 2021 to November 2021, she/he was supplied small, user amounts of crystal methamphetamine daily from CANTRELL. She/he was not sure of the total amount but estimated that it was maybe an ounce or two of methamphetamine. The co-conspirator said she/he has seen CANTRELL sell from an 8-ball to one-fourth an ounce quantities of methamphetamine one or two times. The co-conspirator said she/he has seen CANTRELL sell methamphetamine to various customers on and off. Some days no one came by and other days it was traffic all day, maybe as many as 60 customers in a day. The co-conspirator said Malik Hamilton traded a handgun, a sawed-off shotgun, single shot about 18" long, another long gun, and maybe a pistol called a 390 to CANTRELL in exchange for methamphetamine.

38.    On April 8, 2022, I conducted an interview with Joshua GOODMAN, who stated that he has known CANTRELL about one year, since March/April 2021. GOODMAN said that he would trade CANTRELL two ounces of marijuana for an ounce of crystal methamphetamine one to two times a week. GOODMAN said he was dealing with CANTRELL like this for four to six weeks, then he did not see CANTRELL again until September or October 2021. The last time GOODMAN dealt with CANTRELL, he was fronted an ounce or two of crystal methamphetamine. GOODMAN said that in September or October 2021, he got up with CANTRELL to settle and repay a debt, and that is when GOODMAN agreed to hook CANTRELL up with his source for methamphetamine in West Virginia (SKEENS). CANTRELL was looking for a source that could supply weight so GOODMAN agreed to hook CANTRELL up with SKEENS. GOODMAN said on

9

October 25, 2021, GOODMAN and Fields went to CANTRELL's place on Limestone Road in Pounding Mill, Virginia.  GOODMAN met with CANTRELL and then called SKEENS to make sure she was good for one-fourth a pound of methamphetamine. GOODMAN and Fields departed in Field's vehicle, with Fields driving, and met up with CANTRELL at the Bluefield, Virginia, Walmart/Taco Bell parking lot. CANTRELL got into the front passenger seat of Field's vehicle.  GOODMAN said he thought CANTRELL had a pistol (.40 Colt) in the small of his back and a .22 pistol in his backpack. GOODMAN said they left CANTRELL's motorcycle at the Walmart/Taco Bell parking lot and they drove straight to SKEENS' house.  When they arrived, SKEENS said they could get a half pound of methamphetamine for $3200. CANTRELL put up $2900-3000 and GOODMAN put in $200-300 and an ounce of marijuana.  GOODMAN was to get an ounce of methamphetamine from the deal.  GOODMAN said he, CANTRELL, Fields, and SKEENS drove from SKEENS' house to a nearby location, gave SKEENS the $3200 cash, and SKEENS got half a pound of crystal methamphetamine from an unidentified source. CANTRELL got the methamphetamine from SKEENS.   Just before they depart, CANTRELL gave SKEENS an 8-ball of methamphetamine he had on him as a gift for brokering the deal.

39.   On April 21, 2022, I interviewed Amanda SKEENS.  SKEENS provided details relating to October 25, 2021, when CANTRELL and GOODMAN came to her house in Princeton, West Virginia, to purchase methamphetamine. SKEENS said the deal was supposed to be for one-fourth a pound of methamphetamine, but when GOODMAN and CANTRELL showed up, they wanted half a pound.  CANTRELL gave SKEENS $3400 for half a pound of methamphetamine.   SKEENS said Noah Fields drove her, GOODMAN, and CANTRELL to a nearby area so she could meet her source. SKEENS got the half pound of methamphetamine from her source and gave it to GOODMAN, who then gave the methamphetamine to CANTRELL, who put the methamphetamine into his backpack. They returned to SKEENS' house where CANTRELL weighed out the drugs.

40.   The above facts in this count indicate there is probable cause to believe Steven CANTRELL violated 21 U.S.C. §§ 846 and 841(b)(1)(A), conspiracy to distribute or possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in the Western District of Virginia and elsewhere.

### COUNT IV: Steven CANTRELL for violation of 18 U.S.C. § 924(c)(1)(A)

41.   On October 25, 2021, Steven CANTRELL, Joshua GOODMAN, and Noah Fields were arrested by the Mercer County, West Virginia Sheriff's Office for possession of approximately 232 grams of methamphetamine and CANTRELL was found to be in possession of a loaded Thunderstruck .22 Magnum Revolver (Serial# SVF02969).  The Mercer County Sheriff's Office was conducting surveillance in the vicinity of SKEENS' residence after receiving numerous complaints from citizens and law enforcement regarding drug activity.  Officers observed the black Lincoln MKX in which CANTRELL, GOODMAN, and Fields were traveling make an improper lane change and then initiated a traffic stop.  The driver of the vehicle, Fields, was found to have a suspended/revoked driver's license and placed under arrest.  CANTRELL was removed from the front

passenger seat of the vehicle and patted down for safety, during which the loaded Thuderstruck .22 Magnum Revolver was discovered in his right rear pocket/hip area. After advising Fields the vehicle would have to be towed and upon doing an inventory search of the vehicle, the approximately 232 grams of methamphetamine was found in a backpack in the front passenger side floorboard where CANTRELL had been sitting, along with a loaded Taurus .45 caliber pistol, assorted ammunition, and digital scales. Statements given by GOODMAN and Fields state that GOODMAN, Fields, and CANTRELL had traveled from Tazewell County, Virginia to West Virginia for CANTRELL to purchase half a pound of methamphetamine from a source (Amanda SKEENS) previously used by GOODMAN for $3200. GOODMAN said CANTRELL was carrying one of the pistols while the other was in a backpack with the drugs. The suspected crystal methamphetamine field tested positive for methamphetamine. The suspected crystal methamphetamine was submitted to the DEA lab for further analysis.

42. On January 28, 2022, following an attempted purchase of narcotics by a confidential informant from CANTRELL, the Tazewell County, Virginia Drug Task Force executed a search warrant at the residence of Steven CANTRELL, 255 Limestone Rd., Pounding Mill, VA. CANTRELL was arrested for outstanding warrants for probation violation and contempt of court. During the execution of the search warrant, suspected crystal methamphetamine, approximately 10 firearms (described above), 2449 rounds of ammunition, 7 blasting caps, 1 pound of pyrodex powder, two destructive devices, suspected marijuana, approximately $6000 in U.S. currency, cell phones, and other items were seized. The suspected crystal methamphetamine was field tested using a thermo scientific TruNarc analyzer and tested positive for methamphetamine.

43. On February 14, 2022, I conducted an interview with Zack JUSTICE, who stated that from August 2019 through August 2020, JUSTICE lived with CANTRELL at 3739 Swords Creek Road, Apt. #2, Swords Creek, Virginia. JUSTICE said during that time, CANTRELL was selling about an ounce of methamphetamine a day, anywhere from a gram for $50, an 8-ball for $150, half an ounce for $400, or an ounce for $700. During this timeframe, CANTRELL would take guns (handguns and long guns) in on trade for methamphetamine. JUSTICE stated that Jonathan McGraw traded an SKS to CANTRELL for half an ounce of crystal methamphetamine. JUSTICE stated that CANTRELL took a Ruger Super Blackhawk .44 in trade for methamphetamine. JUSTICE stated that CANTRELL took a Khar .40 in trade for methamphetamine and then traded it to him for one-fourth an ounce of crystal methamphetamine. JUSTICE said he did not deal with CANTRELL again until December 2020. CANTRELL was getting a pound of crystal methamphetamine per week and selling half an ounce of methamphetamine to JUSTICE two to three times a week for $300 per half ounce. JUSTICE said he saw CANTRELL with a pound of methamphetamine on two to three occasions. JUSTICE stated that in December 2020, he got an ounce of crystal methamphetamine fronted to him and paid CANTRELL back $200 of the $500-600 he owed him. From December 2020 to February 2021, JUSTICE said he got crystal methamphetamine from CANTRELL approximately 10 times for a total of four to five ounces.

44. JUSTICE said that from June 2021 to October 2021, he was supplied crystal

11

methamphetamine from CANTRELL out of CANTRELL's trailer in Pounding Mill, Virginia (255 Limestone Rd.). JUSTICE said he got methamphetamine eight to ten times (small quantities, an ounce total). JUSTICE said during these drug transactions, CANTRELL was always armed with a pistol. On December 15, 2021, JUSTICE went to CANTRELL's trailer in Pounding Mill, Virginia (255 Limestone Rd.). CANTRELL said he had just picked up two ounces of crystal methamphetamine from a source he (CANTRELL) met in Hansonville, Virginia. JUSTICE saw the methamphetamine and CANTRELL was armed with a stainless .357 revolver. CANTRELL showed JUSTICE an AK rifle, an AR Rifle, and a .22 pistol (Ruger MKII Stainless), which he said he had taken in on trade. In early 2021, JUSTICE stated that he saw CANTRELL with $25,000 and then $20,000 cash on two separate occasions. In the summer of 2021, JUSTICE saw CANTRELL with $10,000 on two or three occasions. All these occasions were at CANTRELL's trailer in Pounding Mill, Virginia.

45.     On February 14, 2022, I conducted an interview with Rhonda ROSE, who said that around July 2020, she and another co-conspirator sold CANTRELL an ounce of crystal methamphetamine for $350-400. CANTRELL gave them 20 Roxy 30's as a gift. ROSE and CANTRELL shot up methamphetamine and did some of the Roxy 30's. ROSE said from July 2020 to December 2021, she dealt with CANTRELL six (6) times for a total of 6-12 ounces of crystal methamphetamine, paying $350 per ounce. ROSE said there were guns in CANTRELL's house, and that she had shot CANTRELL's 9mm and .22 pistols. ROSE said she was in the process of buying an AK rifle and AR-15 rifle from CANTRELL when he got arrested in January 2022. She said they were to trade cash/methamphetamine to CANTRELL for the guns. ROSE estimated that CANTRELL was probably moving a pound of crystal methamphetamine a week.

46.     On February 22, 2022, I conducted an interview with CANTRELL. CANTRELL said he had sold or traded at least half a dozen (6) pistols to Zack JUSTICE. CANTRELL said he traded half or more of the pistols to JUSTICE for methamphetamine and sold half or less of the pistols to JUSTICE for cash. CANTRELL said he did not like to mix sales and trade, so it was one or the other. CANTRELL said in late 2018 or early 2019, he would get ounces of crystal methamphetamine, paying $400-500 per ounce. CANTRELL said he did not want to discuss his weekly or total weights, but said he was getting supplied from JUSTICE regularly. CANTRELL said he would send money, like $500, with JUSTICE to go get an ounce of methamphetamine. CANTRELL discussed a .44 caliber handgun he got for $200 and later sent with JUSTICE to Bluefield as currency for an ounce of dope. CANTRELL said he did take guns in trade for methamphetamine. Out of ten (10) guns he took in, he paid cash for eight (8) and would trade methamphetamine for the other two (2).

47.     On March 31, 2022, I conducted an interview with a co-conspirator, who said around September 2021, she/he was introduced to CANTRELL as a source for crystal methamphetamine. The co-conspirator stated that from September 2021 to November 2021, she/he was supplied small, user amounts of crystal methamphetamine daily from CANTRELL. She/he was not sure of the total amount but estimated that it was maybe an ounce or two of methamphetamine. The co-conspirator said she/he has seen CANTRELL sell from an 8-ball to one-fourth an ounce quantities of methamphetamine one or two times.

The co-conspirator said she/he has seen CANTRELL sell methamphetamine to various customers on and off. Some days no one came by and other days it was traffic all day, maybe as many as 60 customers in a day. The co-conspirator said Malik Hamilton traded a handgun, a sawed-off shotgun, single shot about 18" long, another long gun, and maybe a pistol called a 390 to CANTRELL in exchange for methamphetamine.

48. On April 21, 2022, I interviewed Amanda SKEENS. SKEENS provided details relating to October 25, 2021, when CANTRELL and GOODMAN came to her house in Princeton, West Virginia, to purchase methamphetamine. SKEENS said CANTRELL had a Thunderstruck pistol on him. SKEENS saw the pistol and said it had four barrels—two on top and two on the bottom. CANTRELL told SKEENS he had another pistol in his backpack.

49. The above facts in this count indicate there is probable cause to believe Steven CANTRELL violated 18 U.S.C. § 924(c)(1)(A), in that he knowingly used, carried, or possessed a firearm during and in relation to, or in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States (conspiracy to distribute or possess with the intent to distribute methamphetamine).

## COUNT V: Steven CANTRELL for violation of 26 U.S.C. § 5861(d)

50. On January 28, 2022, the Tazewell County, Virginia Drug Task Force executed a search warrant at the residence of Steven CANTRELL, 255 Limestone Rd., Pounding Mill, VA. During the execution of the search warrant, two destructive devices were seized, in addition to one pound of pyrodex powder, approximately 10 firearms (described above), 7 blasting caps, and other items.

51. I examined the two destructive devices found at CANTRELL's residence on January 28, 2022. One of the destructive devices is described as a rat trap, modified with the addition of a barrel affixed to one end, measuring approximately 4.25 inches long, with an inside diameter of approximately ¾ inch. Inserted into this barrel was an intact, functioning 12-guage shotgun shell. The shell contained powder, shot, and an unstruck primer. The bail of the rat trap was modified with the addition of a cocked striker that would strike the primer of the shotgun shell placed into the end of the barrel.

52. Based on the examination of reports, photographic evidence, and pending final laboratory analysis, an ATF Explosive Enforcement Officer determined the rat trap device meets the definition of a "destructive device"—more specifically an improvised explosive directional mine—as that term is defined in 26 U.S.C. § 5845(f).

53. The second destructive device found at CANTRELL's residence on January 28, 2022, is described as a MKII/M21, pineapple style, replica/novelty training grenade body that was modified by filling the factory hole in the bottom of the training grenade by welding a bolt into the hole. The grenade was found with an intact, functional military M-228 Fuze. Pyrodex powder was found near the grenade. I disassembled and examined the grenade and fuze. The M-228 fuze contained a powder charge and an unstruck primer. This fuze

was manufactured in Perry, Florida, by Martin Electronics for the Department of Defense. The M-228 practice grenade fuze was live and is classified as an "explosive" as that term is defined in 18 U.S.C. § 841(d) and is subject to federal regulation and traveled in interstate commerce.

54.   Based on the examination of reports, photographic evidence, and pending final laboratory analysis, an ATF Explosive Enforcement Officer determined the grenade, when combined with the M-228 fuze that was inserted into the grenade body and the pyrodex powder that was located near this item, is a portion of a "combination of parts either designed, or intended for use in, converting any device into a destructive device [more specifically, an explosive bomb]. . . and from which a destructive device may be readily assembled" as defined in 26 U.S.C. § 5845(f).

55.   On February 14, 2022, I conducted an interview with Zack JUSTICE. JUSTICE stated he had seen CANTRELL with some novelty grenades. JUSTICE said there were two baseball style grenades and one pineapple style grenade. JUSTICE said he knew they were fake because he could see through the middle of them.

56.   On February 15, 2022, I conducted an interview with a confidential source CS1. CS1 was asked about the rat trap device recovered from CANTRELL's residence on January 28, 2022. CS1 said the device showed up at CANTRELL's residence a few days before the execution of the January 28, 2022, search warrant. CS1 described the device as a rat trap with a barrel strapped to the end that held a 12-guage shotgun shell. CS1 was asked about the purpose of the rat trap device, and CS1 said she/he was not sure but guessed the purpose was to fire the shell. CS1 said someone other than CANTRELL made the device.

57.   On February 15, 2022, a second search warrant was executed at CANTRELL's residence, 255 Limestone Rd., Pounding Mill, VA. During the search, a metal container with a threaded neck (that was colored camo) was located and seized. I spoke with Virginia State Police Special Agent (SA) Campbell about the camo metal container. SA Campbell stated that on January 28, 2022, this container contained suspected pyrodex powder. During the January 28, 2022, search warrant, there was a pound of suspected pyrodex powder located in the room where this item, the grenades, and the blasting caps were located.

58.   I examined the metal container item located at CANTRELL's residence on February 15, 2022. The item is described as a metal container with a threaded neck that was colored camouflage. Based on the examination of reports, photographic evidence, and pending final laboratory analysis, an ATF Explosive Enforcement Officer determined this device, when combined with one of the blasting caps or the M-228 fuze, found in the same room, is a portion of a "combination of parts either designed, or intended for use in, converting any device into a destructive device [more specifically, an explosive bomb]. . . and from which a destructive device may be readily assembled" as defined in 26 U.S.C. § 5845(f).

59.   On February 22, 2022, I conducted an interview with CANTRELL. CANTRELL was asked about the grenade recovered from his residence on January 28, 2022. CANTRELL said he got the grenade hull from a flea market years ago, and it was a practice/novelty hull

14

with a hole in the bottom.  The grenade had a spent fuze on it.  CANTRELL said that in the past year, at his residence and property at 255 Limestone Rd. in Pounding Mill, Virginia, he and Zack JUSTICE welded a bolt in the bottom of the grenade with a MIG welder.  CANTRELL said initially, with the hole in the bottom, if a charge was put inside the grenade and set off, it would just shoot out of the hole like a flare.  The purpose of welding a bolt in the bottom of the grenade was so it would become fragmental, to make it like its intended purpose.  CANTRELL said the fuze came from JUSTICE shortly after they welded the grenade up.  I asked about the fuze and whether CANTRELL had taken the old one out and put the new one in.  CANTRELL said yes.

60.    CANTRELL was asked about the rat trap device recovered from his residence on January 28, 2022.  CANTRELL said a friend made the device while at CANTRELL's residence.  CANTRELL said he was in possession of the rat trap and knew he would get charged with it, so there was no need to add his friend into it.  CANTRELL said the ammunition for this device came from his residence.  CANTRELL said he had tons of ammunition there, particularly 12-gauge shells.  CANTRELL said when the officers found it, the device was not armed and the two little metal pieces that hold pressure on it were loose, and he had disengaged it.  CANTRELL said it looked bad and dangerous, but he made sure it was not set.

61.    CANTRELL was asked about the camo metal container recovered from his residence on February 15, 2022.  CANTRELL said he knew what they were talking about, referring to the metal canister (oxygen tank), and said he had noticed that the threaded neck of the metal container had the same threads the grenade/fuze had, or at least looked the same.

62.    On March 3, 2022, I conducted an interview with a confidential source CS2.  CS2 stated she/he had been to CANTRELL's residence on Limestone Road two to three times before the January 28, 2022, search warrant was executed.  CS2 stated that she/he had seen a metal camo container at CANTRELL's residence and thought it was some kind of air tank.

63.    On March 31, 2022, I conducted an interview with a co-conspirator who said she/he had seen a green and yellow body grenade and maybe a blue, key holder thing on top (M228 Fuze) sitting on CANTRELL's gun safe in his residence at 255 Limestone Rd., Pounding Mill, VA.  CANTRELL told the co-conspirator it was decommissioned, a paper weight.  This was between September 2021 and November 2021.

64.    On April 4, 2022, I conducted a search of the National Firearms Registration and Transfer Record (NFRTR).  Steven CANTRELL does not have any destructive device registered.  "Destructive device" is included in the definition of "firearm" under 26 U.S.C. § 5845(a).

65.    The above facts in this count indicate there is probable cause to believe Steven CANTRELL violated 26 U.S.C. § 5861(d), in that he knowingly possessed a firearm (destructive device) not registered in the NFRTR, in the Western District of Virginia, on January 28, 2022.

## Count VI: Steven CANTRELL for violations of Title 18 U.S.C. §§ 842(i)(1) and (3)

66.    On August 22, 2017, in Huntington County, Indiana, Steven CANTRELL was convicted of illegal possession of a hypodermic syringe, a Level 6 felony punishable by up to two and one half (2.5) years in prison. CANTRELL was sentenced to one and a half (1.5) years in prison with one year and 3 days suspended, plus one year probation.  On February 25, 2019, pursuant to a plea agreement and upon completion of probation, CANTRELL's Level 6 felony conviction for possession of a hypodermic syringe was vacated and entered as a Class A misdemeanor punishable by up to one year in prison. However, unlike in 18 U.S.C. § 921(a)(20), which applies to § 922(g)(1) firearm offenses, the definition of "crime punishable by imprisonment for a term exceeding one year" in the relevant statute applicable to explosives—18 U.S.C. § 841(l)—does not exclude convictions that have been expunged or set aside or for which a person has been pardoned or has had civil rights restored. Thus, since his Indiana felony conviction on August 22, 2017, CANTRELL has been prohibited from possessing explosives under 18 U.S.C. § 842(i)(1).

67.    On January 28, 2022, the Tazewell County, Virginia Drug Task Force executed a search warrant at the residence of Steven CANTRELL, 255 Limestone Rd., Pounding Mill, VA. During the execution of the search warrant, 7 blasting caps were seized, in addition to suspected crystal methamphetamine, suspected marijuana, and other items. The suspected methamphetamine was field tested using a thermo scientific TruNarc analyzer and tested positive for methamphetamine.

68.    On February 14, 2022, I conducted an interview with Zack JUSTICE.  JUSTICE said he lived with CANTRELL from August 2019 to August 2020 in Swords Creek, Virginia. During this timeframe, CANTRELL used methamphetamine intravenously daily.

69.    On February 15, 2022, I conducted an interview with a confidential source (CS1), who said that CANTRELL has lived at 255 Limestone Rd. in Pounding Mill, Virginia, for about two years.  CS1 said she/he has seen CANTRELL shoot up methamphetamine 5-10 times in the past year.

70.    On February 22, 2022, I conducted an interview with CANTRELL.  I asked CANTRELL about the blasting caps located at his residence on Limestone Road on January 28, 2022. CANTRELL said he was going to refrain from answering that, and that he didn't know how to go about any excuse for having the blasting caps.  CANTRELL said he knew they were illegal and that he should not have had them, that there was no dynamite with them, and this pretty much makes them a firecracker.  CANTRELL said it was just something of interest.   CANTRELL said he originally got about a dozen of the blasting caps. CANTRELL said he lit one off in a red gas can behind his residence at Limestone Road. CANTRELL said he thought it was one with blue/white wires.  CANTRELL said in 2018 he disposed of some old dynamite.  CANTRELL said he was an adrenaline junky and that the dynamite was old and dangerous.  He burned it and it did not explode.

71.    During the interview, CANTRELL also admitted he had been using methamphetamine/speed since age 20, or for about 8 years (since 2014), on and off.  It

16

began as occasional use and progressed into intravenous methamphetamine use multiple times a day. CANTRELL said he has been trying to quit using methamphetamine and believed he was being watched. CANTRELL said he has used methamphetamine intravenously for the past four to five years, one to two times a day, rarely more than that. The past few months, CANTRELL has been using methamphetamine once a day with a sober day now and then.

72. On March 3, 2022, I conducted an interview with a confidential source (CS3) who said that CANTRELL uses methamphetamine regularly, daily. CS3 stated that CANTRELL deals methamphetamine regularly.

73. On March 28, 2022, I examined and x-rayed five (5) electric blasting caps/detonators, which are described as having an aluminum shell, teal and yellow leg wires, with 250ms, DSC: BCHEJI printed on the shell. These items were seized from CANTRELL's residence in Pounding Mill Virginia, on January 28, 2022. These commercial blasting caps/detonators were manufactured by the Dyno Nobel company out of Port Ewen, NY on October 1, 1998. Based on my examination, training, and experience, the blasting cap/detonators contain a primary high explosive material. The blasting caps are "explosives" as that term is defined in 18 U.S.C. § 841(d) and are subject to federal regulation and traveled in interstate commerce.

74. On March 31, 2022, I conducted an interview with a co-conspirator who said she/he has seen blasting caps (silver things with blue and yellow wires) while at CANTRELL's residence. The co-conspirator also said CANTRELL is an intravenous, daily user of methamphetamine. The co-conspirator said during the fall when she/he was staying at CANTRELL's residence (September to November 2021), the blasting caps were in a white, plastic container, approximately 4 inches in diameter, with the lid off. In this container were blasting caps with the blue and yellow wires, less than a dozen in total. The description given by the co-conspirator is similar to a container recovered on January 28, 2022, from CANTRELL's residence. This container was a white plastic container with no lid, containing some of the recovered electric blasting caps with teal and yellow leg wires.

75. On April 8, 2022, I conducted an interview with a co-conspirator who said she/he has known CANTRELL for about two years. The co-conspirator said she/he would hang out, get high, and use methamphetamine with CANTRELL. CANTRELL would shoot up methamphetamine regularly, not every time, but suspected him to use daily.

76. The above facts in this count are in support of probable cause for the issuance of an arrest warrant for Steven CANTRELL for knowingly possessing explosives (blasting caps) in the Western District of Virginia on January 28, 2022, after having been convicted in a court of law of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 842(i)(1), and while being an unlawful user of or addicted to methamphetamine, in violation of 18 U.S.C. § 842(i)(3).

## COUNT VII: Joshua GOODMAN for violation of 21 U.S.C. § 846

77.   On October 25, 2021, Steven CANTRELL, Joshua GOODMAN, and Noah Fields were arrested by the Mercer County, West Virginia Sheriff's Office for possession of approximately 232 grams of methamphetamine. The Mercer County Sheriff's Office was conducting surveillance in the vicinity of SKEENS' residence after receiving numerous complaints from citizens and law enforcement regarding drug activity. Officers observed the black Lincoln MKX in which CANTRELL, GOODMAN, and Fields were traveling make an improper lane change and then initiated a traffic stop. The driver of the vehicle, Fields, was found to have a suspended/revoked driver's license and placed under arrest. CANTRELL was removed from the front passenger seat of the vehicle and patted down for safety, during which the loaded Thuderstruck .22 Magnum Revolver was discovered in his right rear pocket/hip area. After advising Fields the vehicle would have to be towed and upon doing an inventory search of the vehicle, the approximately 232 grams of methamphetamine was found in a backpack in the front passenger side floorboard where CANTRELL had been sitting, along with a loaded Taurus .45 caliber pistol, assorted ammunition, and digital scales. Statements given by GOODMAN and Fields state that GOODMAN, Fields, and CANTRELL had traveled from Tazewell County, Virginia to West Virginia for CANTRELL to purchase half a pound of methamphetamine from a source (Amanda SKEENS) previously used by GOODMAN for $3200. The suspected crystal methamphetamine field tested positive for methamphetamine.

78.   On November 3, 2021, Joshua GOODMAN, in the presence of his attorney, stated that in October 2021, Noah Fields drove him and CANTRELL from Virginia to the residence of Amanda SKEENS in Princeton, West Virginia, to purchase methamphetamine. GOODMAN said he has known CANTRELL for a while and that he is dangerous. GOODMAN said CANTRELL needed a connection and he had one with SKEENS. GOODMAN said the methamphetamine they were caught with on October 25, 2021, should have been half a pound and they paid $3200, minus an 8-ball that Amanda SKEENS got for brokering the deal. GOODMAN said CANTRELL was short $300, and GOODMAN put $300 cash into the deal.

79.   On January 31, 2022, members of the Tazewell County, Virginia Drug Task Force spoke with CANTRELL at the Tazewell County courthouse. CANTRELL talked about going to Princeton, West Virginia, and purchasing drugs from a female with Josh GOODMAN and Noah Fields, and said they were arrested by the Drug Task Force in Mercer County, West Virginia, with guns, drugs, and money.

80.   On April 8, 2022, I conducted an interview with Joshua GOODMAN, who stated that he has known CANTRELL about one year, since March/April 2021. GOODMAN said that he would trade CANTRELL two ounces of marijuana for an ounce of crystal methamphetamine one to two times a week. GOODMAN said he would resell the ounce of crystal methamphetamine for $400 to $700, while he would sell the marijuana for $220 to $230 an ounce. GOODMAN said he was dealing with CANTRELL like this for four to six weeks, then he did not see CANTRELL again until September or October 2021. The last time GOODMAN dealt with CANTRELL, he was fronted an ounce or two of crystal

18

methamphetamine. GOODMAN said that in September or October 2021, he got up with CANTRELL to settle and repay a debt, and that is when GOODMAN agreed to hook CANTRELL up with his source for methamphetamine in West Virginia (SKEENS).

81. GOODMAN said he agreed to hook CANTRELL up with SKEENS if he could buy weight. GOODMAN explained to CANTRELL that GOODMAN would continue to get the methamphetamine at West Virginia prices from CANTRELL, so he would not have to make the trip or deal with SKEENS anymore. GOODMAN said the deal he made with SKEENS for CANTRELL was for CANTRELL to get one-fourth a pound of methamphetamine for $1200-1400. CANTRELL was looking for a source that could supply weight, so GOODMAN agreed to hook CANTRELL up with SKEENS.

82. GOODMAN said on October 25, 2021, GOODMAN and Fields went to CANTRELL's place on Limestone Road in Pounding Mill, Virginia. GOODMAN met with CANTRELL and then called SKEENS to make sure she was good for one-fourth a pound of methamphetamine. GOODMAN and Fields departed in Field's vehicle, with Fields driving, and met up with CANTRELL at the Bluefield, Virginia, Walmart/Taco Bell parking lot. CANTRELL got into the front passenger seat of Field's vehicle. GOODMAN said he thought CANTRELL had a pistol (.40 Colt) in the small of his back and a .22 pistol in his backpack. GOODMAN said they left CANTRELL's motorcycle at the Walmart/Taco Bell parking lot and they drove straight to SKEENS' house. When they arrived, SKEENS said they could get a half pound of methamphetamine for $3200. CANTRELL put up $2900-3000 and GOODMAN put in $200-300 and an ounce of marijuana. GOODMAN was to get an ounce of methamphetamine from the deal. GOODMAN said he, CANTRELL, Fields, and SKEENS drove from SKEENS' house to a nearby location, gave SKEENS the $3200 cash, and SKEENS got half a pound of crystal methamphetamine from an unidentified source.

83. GOODMAN recalled he met SKEENS in August 2021. GOODMAN met SKEENS through a mutual friend. GOODMAN said he rode from Richlands, Virginia, to SKEENS' house in Princeton, West Virginia. GOODMAN got two and a half ounces of crystal methamphetamine for $1000 from SKEENS. GOODMAN said the prices were cheaper than in Virginia and SKEENS had supply, so he began going to SKEENS three times a week, getting at least two ounces of methamphetamine each time. SKEENS charged $450 an ounce but if you got more, it was cheaper ($400 an ounce, one-fourth a pound was $1300). By October 2021, GOODMAN was getting one-fourth a pound of methamphetamine two times per week. This went on for about three weeks. GOODMAN said that in the two months he dealt with SKEENS, he made at least 10 trips and spent at least $20,000 with SKEENS before the trip with CANTRELL in October 2021. GOODMAN said the largest amount of methamphetamine he has seen SKEENS with is half a pound, and the most money he has seen her with is $3200.

84. On April 8, 2022, I conducted an interview with Noah Fields. Fields said he drove GOODMAN and CANTRELL to SKEENS' residence in October 2021. Fields said that later in the same trip, he drove GOODMAN, CANTRELL, and SKEENS to a neighborhood near SKEENS' residence to meet the unidentified source where they

purchased the methamphetamine they were stopped with on October 25, 2021, in Mercer County, West Virginia.

85.     On April 21, 2022, I interviewed Amanda SKEENS. SKEENS said she thought she began dealing with GOODMAN in the summer and fall of 2021. SKEENS provided details relating to the last time she dealt with GOODMAN, when GOODMAN said he wanted to bring a friend who would be good for business. SKEENS said the last deal (on October 25, 2021) was supposed to be for one-fourth a pound of methamphetamine, but when GOODMAN and CANTRELL showed up, they wanted half a pound of methamphetamine. SKEENS said GOODMAN and CANTRELL came to her house. CANTRELL gave SKEENS $3400 for half a pound of methamphetamine. SKEENS said Fields drove her, GOODMAN, and CANTRELL to a nearby area so she could meet her source. SKEENS got the half pound of methamphetamine from her source and gave it to GOODMAN, who then gave the methamphetamine to CANTRELL, who put the methamphetamine into his backpack.

86.     The above facts in this count indicate there is probable cause to believe Joshua GOODMAN violated 21 U.S.C. § 846 and 841(b)(1)(A), conspiracy to distribute or possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in the Western District of Virginia and elsewhere.

## COUNT VIII: Amanda SKEENS for violation of 21 U.S.C. § 846

87.     On October 25, 2021, Steven CANTRELL, Joshua GOODMAN, and Noah Fields were arrested by the Mercer County, West Virginia Sheriff's Office for possession of approximately 232 grams of methamphetamine. The Mercer County Sheriff's Office was conducting surveillance in the vicinity of SKEENS' residence after receiving numerous complaints from citizens and law enforcement regarding drug activity. Officers observed the black Lincoln MKX in which CANTRELL, GOODMAN, and Fields were traveling make an improper lane change and then initiated a traffic stop. The driver of the vehicle, Fields, was found to have a suspended/revoked driver's license and placed under arrest. CANTRELL was removed from the front passenger seat of the vehicle and patted down for safety, during which the loaded Thuderstruck .22 Magnum Revolver was discovered in his right rear pocket/hip area. After advising Fields the vehicle would have to be towed and upon doing an inventory search of the vehicle, the approximately 232 grams of methamphetamine was found in a backpack in the front passenger side floorboard where CANTRELL had been sitting, along with a loaded Taurus .45 caliber pistol, assorted ammunition, and digital scales. Statements given by GOODMAN and Fields state that GOODMAN, Fields, and CANTRELL had traveled from Tazewell County, Virginia to West Virginia for CANTRELL to purchase half a pound of methamphetamine from a source (Amanda SKEENS) previously used by GOODMAN for $3200. The suspected crystal methamphetamine field tested positive for methamphetamine.

88.     On November 3, 2021, Joshua GOODMAN, in the presence of his attorney, stated that in October 2021, Noah Fields drove him and CANTRELL from Virginia to the residence of Amanda SKEENS in Princeton, West Virginia, to purchase methamphetamine.

GOODMAN said CANTRELL needed a connection and he had one with SKEENS. GOODMAN said the methamphetamine they were caught with on October 25, 2021, should have been half a pound and they paid SKEENS $3200, minus an 8-ball that SKEENS got for brokering the deal.

89.    On February 14, 2022, I conducted an interview with Rhonda ROSE, who said she met SKEENS in April/May 2021, through Elsa Torres, a mutual friend. ROSE said Torres took her to Bluefield, West Virginia to meet SKEENS at an apartment off Route 52, across from a church. ROSE said she dealt with SKEENS four (4) times. The first time, ROSE got two ounces at $400 per ounce ($800 total). The second time, she met SKEENS at the same apartment in Bluefield and paid SKEENS $2000 for a pound of crystal methamphetamine. The third time, SKEENS and Casey Mason came to ROSE's house in Tazewell, Virginia, and delivered 172 grams (six ounces) for $600. ROSE had sent Mason out to get some methamphetamine and he showed up at ROSE's house with SKEENS. They came in, set the methamphetamine on the table, and picked up the money. The fourth time, ROSE met SKEENS at the Mercer County, West Virginia Mall and got two ounces for $600.

90.    On April 8, 2022, I conducted an interview with Noah Fields. Fields said he drove GOODMAN and CANTRELL to SKEENS' residence in October 2021. Fields said that later in the same trip, he drove GOODMAN, CANTRELL, and SKEENS to a neighborhood near SKEENS' residence to meet the unidentified source where they purchased the methamphetamine they were stopped with on October 25, 2021, in Mercer County, West Virginia. Fields identified a photograph of SKEENS.

91.    On April 8, 2022, I conducted an interview with Joshua GOODMAN, who stated that in September or October 2021, he agreed to hook CANTRELL up with his source for methamphetamine in West Virginia, which was Amanda SKEENS. GOODMAN said he agreed to hook CANTRELL up with SKEENS if he could buy weight. GOODMAN explained to CANTRELL that GOODMAN would continue to get the methamphetamine at West Virginia prices from CANTRELL, so he would not have to make the trip or deal with SKEENS anymore.   GOODMAN said the deal he made with SKEENS for CANTRELL was for CANTRELL to get one-fourth a pound of methamphetamine for $1200-1400.   CANTRELL was looking for a source that could supply weight, so GOODMAN agreed to hook CANTRELL up with SKEENS.

92.    GOODMAN said on October 25, 2021, GOODMAN and Fields went to CANTRELL's place on Limestone Road in Pounding Mill, Virginia. GOODMAN met with CANTRELL and then called SKEENS to make sure she was good for one-fourth a pound of methamphetamine.   GOODMAN and Fields departed in Field's vehicle, with Fields driving, and met up with CANTRELL at the Bluefield, Virginia, Walmart/Taco Bell parking lot. CANTRELL got into the front passenger seat of Field's vehicle. GOODMAN said they left CANTRELL's motorcycle at the Walmart/Taco Bell parking lot and they drove straight to SKEENS' house. When they arrived, SKEENS said they could get a half pound of methamphetamine for $3200. CANTRELL put up $2900-3000 and GOODMAN put in $200-300 and an ounce of marijuana. GOODMAN said he, CANTRELL, Fields, and SKEENS drove from SKEENS' house to a nearby location, gave SKEENS the $3200

cash, and SKEENS got half a pound of crystal methamphetamine from an unidentified source. CANTRELL gave SKEENS an 8-ball of methamphetamine he had on him as a gift for brokering the deal.

93.  GOODMAN recalled he met SKEENS in August 2021. GOODMAN met SKEENS through a mutual friend. GOODMAN said he rode from Richlands, Virginia, to SKEENS' house in Princeton, West Virginia. GOODMAN got two and a half ounces of crystal methamphetamine for $1000 from SKEENS. GOODMAN said the prices were cheaper than in Virginia and SKEENS had supply, so he began going to SKEENS three times a week, getting at least two ounces of methamphetamine each time. SKEENS charged $450 an ounce but if you got more, it was cheaper ($400 an ounce, one-fourth a pound was $1300). By October 2021, GOODMAN was getting one-fourth a pound of methamphetamine two times per week. This went on for about three weeks. GOODMAN said that in the two months he dealt with SKEENS, he made at least 10 trips and spent at least $20,000 with SKEENS before the trip with CANTRELL in October 2021. GOODMAN said the largest amount of methamphetamine he has seen SKEENS with is half a pound, and the most money he has seen her with is $3200.

94.  On April 21, 2022, I interviewed Amanda SKEENS. SKEENS said she thought she began dealing with GOODMAN in the summer and fall of 2021. SKEENS provided details relating to the last time she dealt with GOODMAN, when GOODMAN said he wanted to bring a friend who would be good for business. SKEENS said the last deal (on October 25, 2021) was supposed to be for one-fourth a pound of methamphetamine, but when GOODMAN and CANTRELL showed up, they wanted half a pound. SKEENS said GOODMAN and CANTRELL came to her house. CANTRELL gave SKEENS $3400 for half a pound of methamphetamine. SKEENS said Fields drove her, GOODMAN, and CANTRELL to a nearby area so she could meet her source. SKEENS got the half pound of methamphetamine from her source and gave it to GOODMAN, who then gave the methamphetamine to CANTRELL, who put the methamphetamine into his backpack. They returned to SKEENS' house where CANTRELL weighed out the drugs.

95.  The above facts in this count indicate there is probable cause to believe Amanda SKEENS violated 21 U.S.C. § 846 and 841(b)(1)(A), conspiracy to distribute or possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in the Western District of Virginia and elsewhere.

## COUNT IX: Rhonda ROSE for violation of 21 U.S.C. § 846

96.  On February 14, 2022, I conducted an interview with Rhonda ROSE, who said around July 2020, she sold CANTRELL an ounce of crystal methamphetamine for $350 to $400. CANTRELL gave ROSE 20 Roxy 30's as a gift. ROSE and CANTRELL shot up methamphetamine and did some of the Roxy 30's together. ROSE said from July 2020 to December 2021, she dealt with CANTRELL six (6) times for a total of six to twelve ounces of crystal methamphetamine, paying $350 per ounce. ROSE said she was in the process of buying an AK rifle and AR-15 rifle from CANTRELL when he got arrested in January 2022. ROSE said she was planning to trade cash/methamphetamine to CANTRELL for

the guns.

97.   ROSE said she met SKEENS in April/May 2021, through Elsa Torres, a mutual friend. ROSE said Torres took her to Bluefield, West Virginia to meet SKEENS at an apartment off Route 52, across from a church.  ROSE said she dealt with SKEENS four (4) times. The first time, ROSE got two ounces at $400 per ounce ($800 total).  The second time, she met SKEENS at the same apartment in Bluefield and paid SKEENS $2000 for a pound of crystal methamphetamine.  The third time, SKEENS and Casey Mason came to ROSE's house in Tazewell, Virginia, and delivered 172 grams (six ounces) for $600.  ROSE had sent Mason out to get some methamphetamine and he showed up at ROSE's house with SKEENS.  They came in, set the methamphetamine on the table, and picked up the money. The fourth time, ROSE met SKEENS at the Mercer County, West Virginia Mall and got two ounces for $600.

98.   On March 31, 2022, I conducted an interview with a co-conspirator.  The co-conspirator said she/he knew ROSE and had dealt with her for the past three to four months. The co-conspirator said she/he met ROSE through Johnny Horton and that ROSE was a weight-level dealer that usually moved one-fourth pound quantities of methamphetamine.  The co-conspirator said she/he knew ROSE was supplied methamphetamine out of Bluefield, West Virginia, but did not know her source.  The co-conspirator said she/he got small, user quantities ($50 bags) from ROSE six to twelve times.  The co-conspirator said she/he has seen ROSE deliver methamphetamine to Rodney Royal (a.k.a "Matney") 10-12 times to his address on Call Valley Road (SR 780).

99.   The above facts in this count indicate there is probable cause to believe Rhonda ROSE violated 21 U.S.C. § 846 and 841(b)(1)(A), conspiracy to distribute or possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in the Western District of Virginia and elsewhere.

## COUNT X: Zack JUSTICE for violation of 21 U.S.C. § 846

100.  On February 14, 2022, I conducted an interview with Zack JUSTICE.  JUSTICE said he has known Steven CANTRELL since 2019 and lived with him at 3739 Swords Creek Road, Apt. #2, Swords Creek, Virginia, from August 2019 through August 2020. JUSTICE said during that time, he and CANTRELL were using about an 8-ball (3.5 grams) of methamphetamine daily.  JUSTICE said during that time, he was supplied methamphetamine from two other individuals, paying $250 an ounce and getting approximately one-fourth a pound per week.  CANTRELL was selling about an ounce of methamphetamine a day, anywhere from a gram for $50, an 8-ball for $150, half an ounce for $400, or an ounce for $700.  CANTRELL and JUSTICE would sell what methamphetamine there was at the apartment, and both profited equally.  JUSTICE said CANTRELL took a Khar .40 firearm in trade for methamphetamine and then traded it to JUSTICE for a fourth an ounce of crystal methamphetamine.  JUSTICE detailed that between 2019 and 2020, while living in Swords Creek, Virginia, with CANTRELL, he received the following firearms from CANTRELL as payment for crystal methamphetamine:  a .45 carbine, a 9mm carbine, a KHAR .40 caliber pistol, two (2)

Taurus G2C 9mm pistols, a Taurus .38 ultra-light revolver, and a S&W .22 caliber AR-15.

101. JUSTICE said in December 2020, CANTRELL was getting a pound of crystal methamphetamine per week and selling half an ounce of methamphetamine to JUSTICE two to three times a week for $300 per half ounce. JUSTICE said that in December 2020, he got an ounce of crystal methamphetamine fronted to him and paid CANTRELL back $200 of the $500-600 he owed him.

102. JUSTICE said from December 2020 to February 2021, he got crystal methamphetamine from CANTRELL approximately 10 times for a total of four to five ounces.

103. JUSTICE said from June 2021 to October 2021, he was supplied crystal methamphetamine from CANTRELL out of CANTRELL's residence in Pounding Mill, Virginia (255 Limestone Road). JUSTICE said he got methamphetamine eight to ten times (small quantities, an ounce total).

104. On February 22, 2022, I conducted an interview with CANTRELL. CANTRELL said he met JUSTICE in 2017 after they both got out of jail. CANTRELL bought methamphetamine from JUSTICE. CANTRELL has sold or traded at least half a dozen (6) pistols to Zack JUSTICE. CANTRELL said he traded half or more of the pistols to JUSTICE for methamphetamine and sold half or less of the pistols to JUSTICE for cash. CANTRELL said he did not like to mix sales and trade, so it was one or the other.

105. CANTRELL said in late 2018 or early 2019, he moved to an upstairs apartment in Swords Creek with JUSTICE. CANTRELL would get ounces of crystal methamphetamine from JUSTICE, paying $400-500 per ounce. CANTRELL said he did not want to discuss his weekly or total weights, but said he was getting supplied from JUSTICE regularly. CANTRELL said he would send money, like $500, with JUSTICE to go get an ounce of methamphetamine. CANTRELL discussed a .44 caliber handgun he got for $200 and later sent with JUSTICE to Bluefield as currency for an ounce of dope. CANTRELL said JUSTICE was selling methamphetamine to "Fat/Big Daddy," as well as CANTRELL and Ben Cook.

106. In 2021, the Virginia State Police Drug Task Force made three controlled purchases of small quantities of methamphetamine from JUSTICE. These charges are pending in state court.

107. The above facts in this count indicate there is probable cause to believe Zack JUSTICE violated 21 U.S.C. § 846 and 841(b)(1)(A), conspiracy to distribute or possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in the Western District of Virginia and elsewhere.

<u>Conclusion</u>

Based on the aforementioned information, I believe probable cause exists to conclude that the following persons committed the following violations within the Western District of Virginia:

- Steven CANTRELL, for violations of 18 U.S.C. §§ 922(g)(1) and (3), 21 U.S.C. § 846, 18 U.S.C. § 924(c)(1)(A), 26 U.S.C. § 5861(d), and 18 U.S.C. § 842(i);

- Joshua GOODMAN, for violation of 21 U.S.C. § 846;

- Amanda SKEENS, for violation of 21 U.S.C. § 846;

- Rhonda ROSE, for violation of 21 U.S.C. § 846; and

- Zack JUSTICE, for violation of 21 U.S.C. § 846.

### Request for Sealing

It is respectfully requested that all papers submitted in support of this application, including this affidavit and the related arrest warrants and criminal complaints, be sealed until further order of the Court. I believe sealing the aforementioned documents is necessary because they are relevant to an ongoing investigation of criminal activity and not all targets are aware of the investigation. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet and disseminate them to other criminals as they deem appropriate. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 02, 2022, in Abingdon, Virginia.

William C. Duke Special Agent/CES/BT
Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 2nd DAY OF MAY 2022

HONORABLE PAMELA M. SARGENT
UNITED STATES MAGISTRATE JUDGE

25

Reviewed by: AUSA Lena Busscher